1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

| | |
|---|---|
| KATHRYN ANN DUNNAGAN, | NO. CV 12-668 AGR |
| Plaintiff, | |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

18      Plaintiff Kathryn Ann Dunnagan filed this action on January 25, 2012.

19 Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the

20 magistrate judge on February 14 and 15, 2012.  (Dkt. Nos. 6, 7.)  On November

21 21, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed

22 issues.  The court has taken the matter under submission without oral argument.

23      Having reviewed the entire file, the court reverses the decision of the

24 Commissioner and remands for further proceedings consistent with this opinion.

25
26
27
28

# I.

## PROCEDURAL BACKGROUND

On March 27, 2008, Dunnagan filed applications for disability insurance benefits and supplemental security income.  Administrative Record ("AR") 27.  Dunnagan alleged a disability onset date of June 1, 2003.  AR 27, 167.  The applications were denied initially and on reconsideration.  AR 27, 85-88.  Dunnagan requested a hearing before an Administrative Law Judge ("ALJ").  AR 101-02.  On June 17, 2010, the ALJ conducted a hearing at which Dunnagan and a vocational expert testified.[1]  AR 46-79.  On July 13, 2010, the ALJ issued a decision denying benefits.  AR 24-37.  On November 21, 2011, the Appeals Council denied Dunnagan's request for review.  AR 1-6.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

---

[1] An earlier hearing on March 4, 2010 was continued to allow Dunnagan to get an attorney.  AR 80-84.

**III.**

**DISCUSSION**

**A.     Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

**B.     The ALJ's Findings**

The ALJ found that Dunnagan has the severe impairments of Crohn's disease and depression.  AR 29.  She does not meet or equal a listed impairment.  *Id.*  She has the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, and stand, walk or sit 6 hours in an 8-hour workday.  She has mild limitations in understanding and remembering tasks, sustaining concentration and persistence, socially interacting with the public, and adapting to workplace changes.  AR 30.  She is capable of performing her past relevant work as a waitress.  AR 36.  Alternatively, there are other jobs that exist in the national economy that she can perform such as cashier, office helper and sales attendant in the light category and final assembler, order clerk and telephone quotation clerk in the sedentary category.  AR 36-37.

**C.     Treating Physician**

Dunnagan contends the ALJ improperly disregarded the opinion of her treating physician, Dr. Chang.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To

3

reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Chang is the Co-Director of the Center for Neurobiology of Stress in the Division of Digestive Diseases at UCLA. AR 430. In a letter dated February 3, 2009, Dr. Chang stated that Dunnagan had been under her care for Crohn's disease and chronic abdominal pain since 1997. AR 32, 430. Dunnagan "has recurrent episodes of severe abdominal pain and diarrhea that have been occasionally refractory to various treatment modalities." 32, 430. Her "[s]ymptom flares can last weeks at a time and are associated with sleep disruption." AR 32, 430. She is taking psychotropic medication for depression and anxiety. AR 32, 430. Dr. Chang opined that Dunnagan's symptoms are "very disabling" and "significantly impact her ability to concentrate and perform any work activity." AR 32, 430. Dr. Chang "strongly" feels that Dunnagan "should receive permanent disability because [] her chronic condition is not curative" and impacts her daily functioning and quality of life. AR 32, 430.

The ALJ did not give "any weight" to Dr. Chang's opinion "because it is not supported by the treatment records." AR 33. Whereas Dr. Chang opined that Dunnagan's recurrent episodes are very disabling, Dr. Chang's treatment records since the alleged onset date consistently indicate that Dunnagan 's Crohn's

4

1   disease is stable and doing well with the exception of a few visits.  AR 33, 279-

2   327, 431-81; *see also* AR 482-563.  Dr. Chang explained in a colonoscopy report

3   dated June 29, 2007 that Dunnagan's history of fistula and active Crohn's colitis

4   had been in remission for "quite a long time" but she had experienced a flare

5   when taken off her medications during detoxification from alcohol and was

6   entering remission symptomatically.  AR 33, 299, 536.  The colonoscopy

7   indicated "very minimal disease in the left colon and rectum."  AR 33, 299.  The

8   ALJ noted that, on March 11, 2009, Dunnagan reported constant abdominal pain

9   of 2 out of 10 and abdominal pain of 8 out of 10 during menses.  AR 33-34, 464.

10  She had stools 5-6 times per day, with occasional blood in the stool.  AR 464.  On

11  September 9, 2009, Dr. Chang noted Dunnagan has intermittent functional

12  abdominal pain, typically soft stools up to 3 to 6 times per day, and bothersome

13  pressure from gas and bloating.  AR 469.  Dr. Chang noted that Dunnagan's pain

14  was likely to be functional in origin and not solely due to inflammatory bowel

15  disease because her disease activity was quite good.  AR 34, 470.

16        Dr. Chang's treatment notes indicate that Dunnagan had a flare of Crohn's

17  in late May 2006 secondary to stress regarding her home equity loan and house

18  reconstruction, a severe flare of Crohn's in March 2007 during detoxification from

19  alcohol and cessation of all medications,[2] "persistent symptoms" despite

20  medications in March 2008 when she was under stress, and up to 20 loose stools

21  per day in August 2008 due to the stress of trying to get disability.[3]  AR 33-34 n.1,

22  256-60, 313, 323, 539.  After the August 2008 flare, the November 2008

23  treatment notes indicate that Dunnagan was "doing better," but still had

24

25        [2] At the hearing, Dunnagan reported that she had last entered detox on
26  May 6, 2009 and had celebrated one year of sobriety at AA on May 6, 2010.  AR
    62.

27        [3] Dunnagan argues the ALJ did not address a flare in February 2003 when
28  her father died.  JS 6.  The ALJ need not discuss evidence prior to the alleged
    onset date.  *Burkhart v. Bowen*, 856 F.2d 1335, 1339 n.1 (9th Cir. 1988).

1   symptoms including chronic functional abdominal pain, stress related diarrhea,

2   poor sleep and post-meal lower abdominal discomfort.  AR 540.  Her bowel

3   movements were less frequent but she had blood in the stool with stress.  *Id.*  In

4   March 2009, as the ALJ mentioned, Dunnagan reported constant abdominal pain

5   of 2 out of 10 and 8 out of 10 during menses, and 5-6 bowel movements per day

6   with occasional blood in her stool.  AR 34, 464.  The ALJ accurately reported Dr.

7   Chang's notes in September 2009.  AR 34, 469-70.  But in addition, Dr. Chang's

8   notes indicated Dunnagan had 10 good days out of a month regarding Crohn's

9   disease and required iron supplements.  AR 544.  Previously, in March 2008, Dr.

10   Chang noted that Dunnagan would have no symptoms for one week followed by

11   one week of diarrhea/pain.  AR 324.

12    Accordingly, the ALJ's decision not to give any weight to Dr. Chang's

13   opinion as uncorroborated by treatment records is not supported by substantial

14   evidence.  Dr. Chang's treatment records support her statement that Dunnagan's

15   flares can last weeks at a time (AR 313, 430) and that Dunnagan suffers from

16   continual symptoms that affect her ability to function on a daily and monthly basis.

17   AR 324, 430, 463, 539-40, 544.  Even when Dr. Chang notes that Dunnagan's

18   Crohn's was doing better, she noted that Dunnagan still had persistent symptoms

19   2-3 weeks per month.  *E.g.*, AR 324, 540.

20    The Commissioner is required to assess whether a claimant has the ability

21   to work on a sustained basis.  *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir.

22   1998).  "[O]ccasional symptom-free periods – and even the sporadic ability to

23   work – are not inconsistent with disability."  *Lester v. Chater*, 81 F.3d 821, 833

24   (9th Cir. 1995).  Here, the ALJ did not consider Dr. Chang's opinions regarding

25   Dunnagan's ability to engage in sustained work activity.  *See Reddick*, 157 F.3d

26   at 724.

27    The ALJ gave "weight" to the opinion of Dr. Sedgh, a consultative

28   examiner but did not give any weight to Dr. Sedgh's postural limitations.  AR 34.

1    Dr. Sedgh examined Dunnagan on July 2, 2008.  AR 376.  Under the section

2    titled, "History of present illness and review of medical records," Dr. Sedgh

3    indicated only what Dunnagan reported and did not indicate review of any

4    medical records.[4]  AR 376.  She reported a history of Crohn's disease diagnosed

5    in 1996, multiple fistulas in the past and two surgeries for the fistulas,

6    hospitalization for dehydration, complaints of abdominal cramps, gas and pain

7    daily with frequent bowel movements occurring about 20 times per day,

8    occasional hematechezia and nausea and vomiting associated with the pain, and

9    insomnia.  AR 31, 376.  Dr. Sedgh conducted a physical examination of

10   Dunnagan's abdomen, which revealed sight tenderness and distention.  AR 378,

11   380.  Dr. Sedgh found that she could lift and carry 20 pounds occasionally and 10

12   pounds frequently; could stand, walk or sit for 6 hours; and could occasionally

13   kneel, crouch, and stoop.  AR 31, 380.  Dr. Sedgh did not address Dunnagan's

14   need for bathroom breaks or the history of her flares.

15        Regarding Dunnagan's mental impairment, Dr. Chang's opinion is

16   contradicted by a consultative psychiatrist, Dr. Simonian, who examined

17   Dunnagan on June 3, 2008.  AR 35, 357-61.  Dr. Simonian diagnosed Dunnagan

18   with adjustment disorder with mixed emotional features, and alcohol abuse and

19   dependence in early remission.  AR 35, 360.  He found that Dunnagan's

20   functional ability was 65 percent.  AR 360.  He opined that Dunnagan could

21   understand, remember and carry out detailed and complex instructions; relate

22   and interact with supervisors, co-workers, and the public; maintain concentration

23   and attention on a consistent basis; perform day-to-day work activity, including

24   attendance and safety; adapt to the stresses common to a normal work

25   environment; maintain regular attendance and perform work activities on a

26

27        [4]  *See* 20 C.F.R. §§ 404.1517, 416.917 ("If we arrange for [a consultative]
     examination or test . . . [we] will also give the examiner any necessary
28   background information about your condition.").

7

1  consistent basis; and perform work activities without special or additional

2  supervision.  AR 361.

3  The ALJ properly rejected Dr. Chang's opinions regarding Dunnagan's

4  mental limitations.  Dr. Chang treated Dunnagan's depression with psychotropic

5  medications.  AR 34, 324, 463, 470, 539-40.  In August 2004, Dr. Chang noted

6  that Dunnagan was "doing well on Celexa."  AR 34, 317.  In September 2007,

7  Dunnagan reported that she was taking Celexa and Klonopin "more for pain and

8  sleep."  AR 34, 285.  Dunnagan was hospitalized in March 2007 and November

9  2008, and attended a treatment center in February 2008 for withdrawal

10  symptoms, including depression, secondary to alcohol and drug abuse.  AR 34,

11  256-57, 336, 415-16.  Dr. Chang's treatment notes do not mention issues with

12  concentration or inability to perform any work activity due to Dunnagan's mental

13  condition.  The ALJ's reasons for rejecting Dr. Chang's opinion regarding

14  Dunnagan's mental limitations are supported by substantial evidence.  Dunnagan

15  argues the ALJ should have followed up with Dr. Chang because she invited the

16  reader to contact her if there were further questions regarding her opinion.

17  However, rejection of a treating physician's opinion does not by itself trigger a

18  duty to contact the physician for further explanation.  *McLeod v. Astrue*, 640 F.3d

19  881, 885 (9th Cir. 2011).  The ALJ made no finding that the evidence was

20  ambiguous or that the record was inadequate to allow for proper evaluation.  *See*

21  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to

22  develop the record further is triggered only when there is ambiguous evidence or

23  when the record is inadequate to allow for proper evaluation of the evidence.").

24  Under these circumstances, the ALJ had no duty to follow up with Dr. Chang.[5]

25  Remand is appropriate, however, for the ALJ to reconsider Dr. Chang's

26

27  [5]  Dunnagan also argues that the ALJ "did not engage any medical expert
to assist at the hearing."  JS 10.  She fails, however, to show that such expert
28  testimony was required.

8

1    opinions regarding Dunnagan's physical condition.[6]

2        **D.    Credibility**

3        Dunnagan contends the ALJ improperly discounted her subjective

4    symptom testimony.

5        "To determine whether a claimant's testimony regarding subjective pain or

6    symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*

7    *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must

8    determine whether the claimant has presented objective medical evidence of an

9    underlying impairment 'which could reasonably be expected to produce the pain

10   or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

11   (9th Cir. 1991) (en banc)).  The ALJ found that Dunnagan's medically

12   determinable impairments could reasonably be expected to produce the alleged

13   symptoms.  AR 35.

14       "Second, if the claimant meets this first test, and there is no evidence of

15   malingering, the ALJ can reject the claimant's testimony about the severity of her

16   symptoms only by offering specific, clear and convincing reasons for doing so."

17   *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making

18   a credibility determination, the ALJ 'must specifically identify what testimony is

19   credible and what testimony undermines the claimant's complaints[.]'"  *Greger v.*

20   *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  Here, the ALJ

21   found no evidence of malingering.  He found that Dunnagan's statements

22

23       [6] Dunnagan argues that the ALJ failed "to separate out non-substance
     abuse impairments and determine whether [she] would still be disabled."  JS 9,
24   23 (citation omitted).  "An individual shall not be considered to be disabled . . . if
     alcoholism or drug addiction would . . . be a contributing factor material to the
25   Commissioner's determination that the individual is disabled."  42 U.S.C. §
     423(d)(2)(C).  The ALJ was not required to apply the sequential-evaluation
26   process a second time to determine whether Dunnagan would still be disabled if
     she stopped using drugs and/or alcohol because he found that Dunnagan was
27   not disabled.  *See Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001)
     (ALJ must identify disability under five-step sequential analysis before conducting
28   DAA Analysis); AR 36-37.

1    concerning the intensity, persistence and limiting effects of her symptoms were

2    not credible to the extent they were inconsistent with the RFC assessment.  AR

3    35.

4        In weighing credibility, the ALJ may consider factors including:  the nature,

5    location, onset, duration, frequency, radiation, and intensity of any pain;

6    precipitating and aggravating factors (e.g., movement, activity, environmental

7    conditions); type, dosage, effectiveness, and adverse side effects of any pain

8    medication; treatment, other than medication, for relief of pain; functional

9    restrictions; the claimant's daily activities; and "ordinary techniques of credibility

10   evaluation."  *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks

11   omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a

12   claimant's statements; (b) inconsistencies between a claimant's statements and

13   activities; (c) exaggerated complaints; and (d) an unexplained failure to seek

14   treatment.  *Thomas*, 278 F.3d at 958-59.

15       The ALJ discounted Dunnagan's credibility for three reasons.  Her

16   subjective complaints and alleged limitations were "out of proportion" to the

17   objective findings, not consistent with treatment, and not consistent with her

18   activities of daily living.  AR 35.

19       As this matter is being remanded for reconsideration of Dr. Chang's

20   opinion, the ALJ is free to reconsider Dunnagan's credibility on remand.

21       **E.    Lay Witness Testimony**

22       Dunnagan contends the ALJ improperly discounted the Third Party

23   Function Report of her husband, Mr. Dunnagan, "without discussion."  JS 32.

24       "In determining whether a claimant is disabled, an ALJ must consider lay

25   witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r of*

26   *Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  "When an ALJ discounts

27   the testimony of lay witnesses, 'he [or she] must give reasons that are germane

28   to each witness.'"  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694

10

1   (9th Cir. 2009) (citation omitted).  Dunnagan has not identified material limitations

2   that were not already generally described by her.  *Id.* at 694 (When an ALJ has

3   provided clear and convincing reasons for rejecting a claimant's testimony, and

4   the lay witness' testimony was similar to the claimant's testimony, "it follows that

5   the ALJ also gave germane reasons for rejecting the [lay witness'] testimony.").

6   Because this matter is being remanded, the ALJ is free to reconsider the lay

7   witness statements.

8                   **F.      Past Relevant Work or Other Work**

9          "At step four of the sequential analysis, the claimant has the burden to

10  prove that he cannot perform his prior relevant work 'either as actually performed

11  or as generally performed in the national economy.'"  *Carmickle v. Comm'r of*

12  *Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted).

13  "Although the burden of proof lies with the claimant at step four, the ALJ still has

14  a duty to make the requisite factual findings to support his conclusion."  *Pinto v.*

15  *Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  The ALJ must make "specific

16  findings as to the claimant's residual functional capacity, the physical and mental

17  demands of the past relevant work, and the relation of the residual functional

18  capacity to the past work."  *Id.* at 845; Social Security Ruling 82-62;[7] *see also* 20

19  C.F.R. §§ 404.1520(e), 416.920(e).

20         Given that this matter is being remanded, the ALJ is free to reconsider

21  whether Dunnagan can perform her past relevant work or any other work.

22                                        **IV.**

23                                       **ORDER**

24         IT IS HEREBY ORDERED that the decision of the Commissioner is

25  _____

26         [7]  Social Security rulings do not have the force of law.  Nevertheless, they
    "constitute Social Security Administration interpretations of the statute it
27  administers and of its own regulations," and are given deference "unless they are
    plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
28  F.2d 1453, 1457 (9th Cir. 1989).

1 reversed and this matter is remanded for further proceedings consistent with this

2 opinion.

3      IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

4 Order and the Judgment herein on all parties or their counsel.

5

6

7 DATED: May 3, 2013

8                                  ALICIA G. ROSENBERG
                                United States Magistrate Judge